# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 04/26/2022 08:48 AM Sherri R. Carter, Executive Officer/Clerk of Court, by C. Monroe,Deputy Clerk
Case 2:22-cv-03686-MRW   Document 1-1   Filed 05/31/22   Page 2 of 25   Page ID #:19
Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Daniel Crowley

EUSTACE DE SAINT PHALLE, SBN 179100
GEORGE W. ELLARD, SBN 158195
PHIL JOHNSON, SBN 335869
RAINS LUCIA STERN ST. PHALLE & SILVER, PC
2300 Contra Costa Blvd., Suite 500
Pleasant Hill, CA 94523
Tel: (925) 609-1699
Fax: (925) 609-1690
E-mail: PersonalInjuryGroup@RLSlawyers.com

ATTORNEYS FOR PLAINTIFFS
ELIE ZAAROUR &
ROULA ZAAROUR

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF LOS ANGELES

UNLIMITED JURISDICTION

| | |
|---|---|
| ELIE ZAAROUR; ROULA ZAAROUR,<br><br>             Plaintiffs,<br><br>    vs.<br><br>KONINKLIJKE PHILIPS N.V.;<br>PHILIPS NORTH AMERICA LLC; and<br>PHILIPS RS NORTH AMERICA LLC,<br>SUPERCARE HEALTH, INC., and DOES 1-100, inclusive,<br><br>          Defendants. | CASE NO.    22STCV13755<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1st Cause of Action – Negligence**<br>**2nd Cause of Action – Product Liability, Design Defect**<br>**3rd Cause of Action – Product Liability, Manufacturing Defect**<br>**4th Cause of Action – Product Liability, Failure to Warn**<br>**5th Cause of Action – Breach of Express Warranty**<br>**6th Cause of Action – Breach of Implied Warranty of Merchantability**<br>**7th Cause of Action – Intentional Misrepresentation**<br>**8th Cause of Action – Concealment**<br>**9th Cause of Action – Negligent Misrepresentation**<br>**10th Cause of Action – Loss of Consortium**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR ("Plaintiffs") hereby allege against

Defendants KONINKLIJKE PHILIPS N.V. ("Royal Philips"); PHILIPS NORTH AMERICA LLC

("Philips NA"); and PHILIPS RS NORTH AMERICA LLC ("Philips RS") (collectively, Royal Philips,

Philips NA, and Philips RS are "Philips"), SUPERCARE HEALTH, INC. and DOES 1-100,  inclusive, and each of them as follows:

## SUMMARY OF COMPLAINT

1.      Plaintiffs bring this action for injuries caused by the use of Continuous Positive Airway Pressure (CPAP) and Bi-Level Positive Airway Pressure (Bi-Level PAP) devices and mechanical ventilators manufactured by Philips, which contain polyester-based polyurethane sound abatement foam ("PE-PUR Foam").

2.      On April 26, 2021, Philips made a public announcement that it had determined there were risks that the PE-PUR Foam used in certain CPAP, Bi-Level PAP, and mechanical ventilator devices it manufactured may degrade or off-gas under certain circumstances.

3.      On June 14, 2021, Royal Philips issued a recall in the United States of its CPAP, Bi-Level PAP, and mechanical ventilator devices containing PE-PUR Foam, because Philips determined that: (a) the PE-PUR Foam was at risk for degradation into particles that may enter the devices' pathway and be ingested or inhaled by users, and (b) the PE-PUR Foam may off-gas certain chemicals during operation. Philips further disclosed in its Recall Notice that, "these issues can result in serious injury which can be life-threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment."

4.      Philips has disclosed that the absence of visible particles in the devices does not mean that PE-PUR Foam breakdown has not already begun. Philips reported that lab analysis of the degraded foam reveals the presence of harmful chemicals, including Toluene Diamine ("TDA"), Toluene Diisocyanate ("TDI"), and Diethylene Glycol ("DEG").

5.      Prior to issuing the Recall Notice, Philips received complaints regarding the presence of black debris/particles within the air path circuit of its devices (extending from the device outlet, humidifier, tubing, and mask). Philips also received reports of headaches, upper airway irritation, cough, chest pressure and sinus infection from users of these devices.

6.      In its Recall Notice, Philips disclosed that the potential risks of particulate exposure to users of these devices include irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (e.g., kidneys and liver) and toxic carcinogenic effects. The

potential risks of chemical exposure due to off-gassing of PE-PUR Foam in these devices include headache/dizziness, irritation (eyes, nose, respiratory tract, skin), hypersensitivity, nausea/vomiting, toxic and carcinogenic effects.

7.      Philips recommended that patients using the recalled CPAP and Bi-Level PAP devices immediately discontinue using their devices and that patients using the recalled ventilators for life-sustaining therapy consult with their physicians regarding alternative ventilator options.

8.      In or around April 2020, Plaintiff ELIE ZAAROUR began using a Philips Respironics DreamStation CPAP, which he used nightly from the date of receipt until July 2021.

9.      While using the device, Plaintiff ELIE ZAAROUR experienced throat irritation and was diagnosed with cancer on March 4, 2022.

10.     Further, Plaintiff ELIE ZAAROUR is scheduled to undergo a significant medical procedure in May 2022.

11.     Plaintiffs have incurred substantial expenses for medical care and to replace the device. In addition, Plaintiff ELIE ZAAROUR experienced throat irritation during use of the Philips recalled machine. Since being notified of the recall, Plaintiffs have experienced anxiety concerning the serious health risks Plaintiff ELIE ZAAROUR faces from possible exposure to off-gassed or degraded PE-PUR Foam in the Recalled Machines, including the machine used by Plaintiff ELIE ZAAROUR.

12.     Plaintiffs seek to recover damages based on, inter alia, Philips' breach of express warranty, breach of implied warranties, misrepresentations, omissions, and breaches of state consumer protection laws in connection with its manufacture, marketing and sale of devices containing PE-PUR Foam.

## PARTIES AND VENUE

13.     Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR are and were at the time of the incident giving rise to this Complaint, residents of San Pedro, Los Angeles County, California.

14.     Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR are, and at all times mentioned herein were, lawfully wedded husband and wife.

15.     Defendant Royal Philips is a Dutch multinational corporation with its principal place of business located in Amsterdam, Netherlands. Royal Philips is the parent company of the Philips Group of healthcare technology businesses, including Connected Care businesses focusing on Sleep & Respiratory

Care. Royal Philips holds directly or indirectly 100% of its subsidiaries Philips NA and Philips RS in the manufacturing, selling, distributing, and supplying of the recalled CPAP, Bi-Level PAP, and mechanical ventilator devices.

16.     Defendant Philips NA is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. Philips NA is a wholly owned subsidiary of Royal Philips.

17.     Defendant Philips RS is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15206. Philips RS is a wholly owned subsidiary of Royal Philips. Philips RS was formerly operated under the business name Respironics, Inc. ("Respironics"). Royal Philips acquired Respironics in 2008.

18.     Defendant SuperCare Health, Inc. is a California corporation that marketed, sold and distributed the recalled CPAP with its principal place of business located at 8345 Firestone Boulevard, Suite 210, Downey, California 90241.

19.     The true names and capacities, whether individual, corporate, partnership, joint venture, franchisee or otherwise of Defendants DOES 1-100, inclusive, are unknown to Plaintiffs who sue these Defendants by fictitious names.

20.     Each of the Defendants named in this Complaint as a DOE is legally responsible in some manner for the events and happenings alleged in this Complaint, and legally caused injury and damage to Plaintiff as alleged in this Complaint.

21.     Plaintiffs are informed, believe and therefore allege that at all times mentioned herein, certain of the Defendant DOES are the successors in interest to each of the remaining Defendants and on that basis, are liable for any act or omission of Defendants alleged in this Complaint.

22.     Venue is proper in this County because the incident giving rise to this Complaint occurred in this County and the subject product was distributed, purchased, and sold in this County.

## FACTUAL BACKGROUND

**A.    Continuous Positive Airway Pressure Therapy**

23.     Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical treatment primarily used to treat sleep apnea. CPAP therapy typically involves the use of a hose and a nasal

or facemask device that delivers constant and steady air pressure to an individual's throat to help individuals breathe.

24.     Sleep apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout an individual's sleep cycle. These interruptions, called "apneas," are caused when the soft tissue in an individual's airway collapses. The airway collapse prevents oxygen from reaching the individual's lungs which can cause a buildup of carbon dioxide. If the individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from sleep so that the individual will not remember. Despite the brevity of the interruptions, the sleep cycle disruptions caused by sleep apnea can dramatically impact a person's lifestyle, including negatively impacting energy, mental performance, and long-term health. CPAP therapy helps treat sleep apnea by preventing the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing.

**B.     Bi-Level Positive Airway Pressure Therapy**

25.     Bi-Level Positive Airway Pressure ("BiPAP") therapy is a common alternative to CPAP therapy for treating sleep apnea. Similar to CPAP therapy, BiPAP therapy is nonsurgical and involves the use of a nasal or facemask device to maintain air pressure in an individual's airway. BiPAP therapy is distinguishable from CPAP therapy, however, because Bi-Level PAP devices deliver two alternating levels – inspiratory and expiratory – of pressurized air into a person's airway, rather than a single continuous level of pressurized air delivered by a CPAP device. The inspiratory positive airway pressure assists a person as a breath is taken in. Conversely, the expiratory positive airway pressure is applied to allow a person to comfortably breathe out. Bi-Level PAP devices deliver one level of pressurized air (the inspiratory positive level) to assist as a person inhales, and another level (the expiratory level) as a person exhales.

**C.     Mechanical Ventilation**

26.     Mechanical ventilation is a treatment to help a person breathe when they find it difficult or are unable to breathe on their own. A mechanical ventilator pushes airflow into the patient's lungs to help them breathe. Mechanical ventilation may be invasive ventilation with a tube inserted into a patient's airway, performed in the intensive care unit in the hospital or a long-term institutional setting. Non-invasive ventilation can be used at home by people with respiratory difficulties.

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

## **EVENTS GIVING RISE TO THE COMPLAINT**

27.     Philips developed, marketed, and sold a variety of CPAP and Bi-Level PAP respiratory devices and mechanical ventilators under its "Sleep & Respiratory Care" segment of its business designed to assist individuals with a number of sleep, breathing, and respiratory conditions, including obstructive sleep apnea, central sleep apnea, complex sleep apnea syndrome, and Chronic Obstructive Pulmonary Disease (COPD), as well as to assist those individuals requiring invasive and non-invasive ventilators for acute and sub-acute hospital environments. Philips' CPAP and Bi-Level PAP respirator devices and its mechanical ventilators typically cost several hundred, if not thousands of dollars. Philips has sold millions of these devices in the United States.

**A.     Philips Sleep & Respiratory Care Devices Endangered Users**

28.     On April 26, 2021, in its Quarterly Report for Q1 2021, Philips disclosed for the first time, under a section entitled "Regulatory Update," that device user reports had led to a discovery that the type of PE-PUR Foam Philips used to minimize noise in several CPAP and Bi-Level PAP respirators and mechanical ventilators posed health risks to users. Specifically, Philips disclosed that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone, and certain environmental conditions involving high humidity and temperature."

29.     Seven weeks later, on June 14, 2021, Philips announced a recall of numerous models of CPAP and Bi-Level PAP devices, as well as a variety of its mechanical ventilators "to address identified potential health risks related to the polyester-based polyurethane (PE-PUR) sound abatement foam component in these devices." Specifically, Philips announced that it had determined that the "Pe-PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals." In total, Philips announced that "[b]etween 3 million and 4 million" devices are targeted in the recall.

30.     The list of the devices recalled by Philips (the "Recalled Devices" or "Recalled Machines") include:

Philips CPAP and Bi-Level PAP Devices
Manufactured Before April 26, 2021 Subject to Recall
Device Name/Model Type

- E30 (Emergency Use Authorization) – Continuous Ventilator, Minimum Ventilatory Support, Facility Use

- DreamStation ASV; DreamStation ST, AVPAPS; SystemOne ASV 4; C Series ASV; C Series S/T and AVAPS; OmniLab Advanced Plus – Continuous Ventilator, Non-life Supporting
- SystemOne (Q Series); DreamStation; DreamStation GO; Dorma 400; Dorma 500; REMStar SE Auto – Non-continuous Ventilator

Philips Mechanical Respirator Devices
Manufactured Before April 26, 2021 Subject to Recall
Device Name/Model Type

- Trilogy 100 Ventilator; Trilogy 200 Ventilator; Garbin Plus, Aeris, LifeVentVentilator – Continuous Ventilator
- A-Series BiPAP Hybrid A30; Philips A-Series BiPAP V30 Auto – Continuous Ventilator, Minimum Ventilatory Support, Facility Use
- Philips A-Series BiPAP A40; Philips A-Series BiPAP A30 – Continuous Ventilator, Non-life Supporting

31.     According to Philips, the PE-PUR Foam used in Recalled Devices puts users at risk of suffering from: "[i]rritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (e.g., kidneys and liver) and toxic carcinogenic affects."

32.     Philips reported to physicians that PE-PUR Foam particles "may cause irritation and airway inflammation, and this may be particularly important for patients with underlying lung diseases or reduced cardiopulmonary reserve."

33.     Further, Philips reported that "based on lab testing and evaluations, it may be possible that these potential health risks could result in a wide range of potential patient impact, from transient potential injuries, symptoms and complications, as well as possibly serious injury which can be life-threatening or cause permanent impairment, or require medical intervention to preclude permanent impairment."

34.     Philips announced that it has received reports of specific complaints from users of Recalled Devices who suffered from "headache[s], upper airway irritation, cough, chest pressure and sinus infection."

**B.      The Health Risks Associated with Use of the Recalled Devices Renders Them Worthless**

35.     As a result of the health risks associated with the use of the Recalled Devices, together with Philips' concealment of these risks from the date they were first reported to Philips or discovered by Philips through April 26, 2021, the Recalled Devices have been rendered completely worthless or, at the very least, have been substantially diminished in value.

36. The information described above, including the now-known health risks of Philips CPAP devices, Bi-Level PAP devices and mechanical ventilators, the recall, and the medical warnings and advice issued by Philips, have rendered the Recalled Devices worthless to patients with sleep apnea and respiratory conditions. Individuals not using life-supporting ventilators must immediately discontinue their use of the Recalled Devices or continue to face serious health risks as grave as organ failure or cancer. If they choose to discontinue use of the Recalled Devices they must pay for another expensive device in order to receive effective treatment for their sleep apnea and/or respiratory conditions. Individuals using life-supporting ventilators must seek an alternative treatment before discontinuing use of the Recalled Device.

37. Recognizing this, Philips issued the following advice to patients using any of the Recalled Devices:

- "For patients using BiLevel PAP and CPAP devices: Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."

- "For patients using life-sustaining mechanical ventilator devices: DO NOT discontinue or alter prescribed therapy, without consulting physicians to determine appropriate next steps."

38. As a result of the above, Plaintiff will have to undertake considerable expense replacing the Recalled Device.

**C.      Philips Unreasonably Delayed its Recall**

38. At no time prior to its Regulatory Update on April 26, 2021, did Philips disclose to purchasers or users of the Recalled Devices that the PE-PUR Foam contained therein may off-gas or degrade upon use. Similarly, prior to the Update, Philips did not disclose any health risks associated with use of the Recalled Device.

39. Philips have not disclosed when they first discovered or received reports from users of their Sleep & Respiratory Care devices "regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)."

40. At a minimum, as a result of user reports, Philips were aware of the off-gassing and degradation of the PE-PUR Foam used in the Recalled Devices at some point prior to the recall yet continued to manufacture and sell the Recalled Devices with such awareness. During this period, Philips

unreasonably and unjustly profited from the manufacture and sale of the Recalled Devices and unreasonably put users of the Recalled Devices at risk of development of serious adverse health effects, including organ failure and cancer.

**D.      Plaintiff ELIE ZAAROUR**

41.      Plaintiff ELIE ZAAROUR purchased and used a Recalled Device, a Philips Respironics DreamStation device, prior to June 14, 2021.

42.      The manuals accompanying Plaintiff's device did not contain any language or warnings of health risks associated with use of the device, including irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (e.g., kidneys and liver) and toxic carcinogenic effects. Had Philips informed Plaintiff of these risks, he would not have used the Recalled Device.

43.      Without knowing of the health risks associated with use of the Recalled Device, Plaintiff used the Recalled Device regularly to treat sleep apnea until learning of the recall in July 2021.

44.      As a result of the health risks associated with continued use of the Recalled Device, Plaintiff ELIE ZAAROUR was diagnosed with cancer.

## TOLLING

45.      Plaintiff had no way of knowing about Philips' conduct with respect to the health risks associated with the use of the Recalled Device.

46.      Plaintiff, through the exercise of reasonable care, could not have discovered the conduct by Philips alleged herein. Further, Plaintiff did not discover and did not know of facts that would have caused a reasonable person to suspect that Philips was engaged in the conduct alleged herein.

47.      Plaintiffs' first notice of the conduct alleged herein came in July 2021.

48.      For these reasons, all applicable statutes of limitations have been tolled by the discovery rule with respect to claims asserted by Plaintiffs.

49.      By failing to provide immediate notice of the adverse health effects associated with continued use of the Recalled Device, Philips concealed its conduct and the existence of the claims

1    asserted herein from Plaintiffs.

2        50.    Upon information and belief, Philips intended its acts to conceal the facts and

3    claims from Plaintiffs. Plaintiffs were unaware of the facts alleged herein without any fault of lack

4    of diligence on their part and could not have reasonably discovered Philips' conduct. For this

5    reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs should be

6    tolled.

7    **FIRST CAUSE OF ACTION – NEGLIGENCE**
**(Against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and**
8    **PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC., and DOES 1-100,**
9    **inclusive)**

10       51.    Plaintiffs incorporate by reference paragraphs 1-50 above as though fully set forth herein.

11       52.    Defendants had a duty to individuals, including the Plaintiffs, to use reasonable care in

12   designing, manufacturing, marketing, labeling, packaging and selling the recalled machines, including the

13   Recalled Devices.

14       53.    Defendants were negligent in failing to use reasonable care as described herein in designing

15   and manufacturing the recalled machines, as well as the machine that Plaintiff ELIE ZAAROUR

16   purchased and used. Defendants breached their aforementioned duty by:

17           a.    Failing to design the Recalled Machines so as to avoid an unreasonable and

18               increased risk of harm of cancer and other injuries in users;

19           b.    Including in the design of the recalled machines flawed polyurethane PE-PUR

20               sound abatement foam that could break down, flake off and/or chemicalize and

21               infiltrate the device's air pathway while the user is sleeping, exposing them to

22               increased and unnecessary risk of cancer as well as other injuries;

23           c.    Manufacturing certain Philips machines, including the Recalled Devices, with a

24               specific lot and/or lots of flawed polyurethane PE-PUR sound abatement foam

25               that could break down, flake off and/or chemicalize and infiltrate the device's air

26               pathway while the user is sleeping, exposing them to increased and unnecessary risk

27               of cancer as well as other injuries;

28           d.    otherwise negligently or carelessly designing, manufacturing, marketing, labeling,

1    packaging and/or selling the Recalled Devices.

2    54.    Defendants also negligently failed to warn or instruct the Plaintiffs in the following

3    manners:

4    a.    the recalled machine's flawed polyurethane PE-PUR sound abatement foam

5    propensities to break down, flake off and/or chemicalize and infiltrate the device's

6    air pathway while the user is sleeping, exposing them to increased and unnecessary

7    risk of cancer as well as other injuries;

8    b.    the recalled machine's polyurethane PE-PUR sound abatement foam propensities

9    for degradation, fragmentation and/or chemicalization;

10    c.    the rate and manner in which the polyurethane PE-PUR sound abatement foam

11    would break down, flake off and/or chemicalize and infiltrate the device's air

12    pathway while the user is sleeping;

13    d.    the risk of chronic inflammation resulting from the use of the recalled machines;

14    e.    the risk of chronic infections resulting from the recalled machines;

15    f.    the risk of lung, kidney, and/or rectal cancers from exposure to the foam;

16    g.    the need for corrective or revision surgery to adjust or remove cancerous tumors

17    and/or nodules as a result of usage of the recalled machines;

18    h.    the severity of complications that could arise as a result of implantation of the

19    recalled machines.

20    55.    As a direct and legal result of Defendants' negligence, Plaintiffs experienced significant

21    mental and physical pain and suffering, sustained permanent injury, underwent medical treatment and will

22    likely undergo further medical treatment and procedures, suffered financial or economic loss, including,

23    but not limited to, obligations for medical services and expenses, lost income, and other damages.

24    Wherefore, Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR pray for judgment against Defendants

25    KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH

26    AMERICA LLC, SUPERCARE HEALTH, INC. and DOES 1-100, inclusive, as set forth below.

27

28

**SECOND CAUSE OF ACTION – PRODUCT LIABILITY – DESIGN DEFECT (Against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC., and DOES 1-100, inclusive)**

56.     Plaintiffs incorporate by reference paragraphs 1-55 above as though fully set forth herein.

57.     The recalled machine used by Plaintiff ELIE ZAAROUR was not reasonably safe for its intended uses and was defective as described herein with respect to its design. As previously stated, the machine's design defects include, but are not limited to:

    a.     The use of polyurethane PE-PUR sound abatement foam in the recalled machines and the immune reaction that results from such material, causing adverse reactions and injuries;

    b.     Failing to design the recalled machines so as to avoid an unreasonable and increased risk of harm of cancer and other injuries in users;

    c.     Including in the design of the recalled machines flawed polyurethane PR-PUR sound abatement foam that could break down, flake off and/or chemicalize and infiltrate the device's air pathway while the user is sleeping, exposing them to increased and unnecessary risk of cancer as well as other injuries;

    d.     Failing to use alternatively available sound abatement materials and/or foams in the recalled machines, such as plastic, silicone, or rubber, which would not break down, flake off and/or chemicalize and infiltrate the device's air pathway while the user is sleeping;

    e.     Otherwise negligently or carelessly designing, manufacturing, marketing, labeling, packaging and/or selling the recalled machines.

58.     At all times, the use of the recalled machines, as well as Plaintiff ELIE ZAAROUR's use of the Recalled Device and its components were at all times foreseeable and foreseen by Defendants as it was used by Plaintiff ELIE ZAAROUR in the manner intended by Defendants.

59.     The recalled machine used by Plaintiff ELIE ZAAROUR was defective in design in that it failed to perform as safely as a reasonable consumer would expect when used in an intended or reasonably foreseeable manner.

60.     The recalled machines, including the Recalled Device used by Plaintiff ELIE ZAAROUR, are further defective in that the risks of danger inherent in its design outweigh the benefits, in that the gravity of danger posed by the design was great, the likelihood that such danger would cause injury was substantial, there were feasible, safer alternative designs known to Defendants at the time of manufacture, the financial costs of an improved design was minor and there were likely no adverse consequences to the product, or to the user, that would result from an alternative design.

61.     Defendants, and each of them, knew that the recalled machines, including Plaintiff ELIE ZAAROUR's Recalled Device, and the component parts of these CPAP/BiPAP machines would be purchased and used without inspection for defects in the design of the machine or its masks/attachments.

62.     The recalled machines, including Plaintiff ELIE ZAAROUR's Recalled Device, and the component parts of these machines were defective when they left the control of each of these Defendants.

63.     As a direct and legal result of the recalled machines, including Plaintiff ELIE ZAAROUR's Recalled Device, and the aforementioned defects as described herein, the Plaintiffs have experienced significant mental and physical pain and suffering, sustained permanent injury, undergone medical treatment and will likely undergo future medical treatment and procedures, suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages.

64.     Defendants are strictly liable to the Plaintiffs for designing, manufacturing, marketing, labeling, packaging and selling the recalled machines, including Plaintiff ELIE ZAAROUR's Recalled Device.

65.     As a direct and legal result of one or more of the above-stated negligent acts, Plaintiffs have suffered and will continue to suffer injury of a personal and pecuniary nature, including pain and suffering, medical expenses, lost income, and disability.

Wherefore, Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR pray for judgment against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC., and DOES 1-100, inclusive, as set forth below.

**THIRD CAUSE OF ACTION – PRODUCT LIABILITY –
MANUFACTURING DEFECT**
**(Against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and
PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC., and DOES 1-100,
inclusive)**

66.     Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR incorporate by reference paragraphs 1-65 above as though fully set forth herein.

67.     At all times, the use of the recalled machines, as well as Plaintiff ELIE ZAAROUR's use of the Recalled Device and its components was at all times foreseeable and foreseen by Defendants as it was used by Plaintiff ELIE ZAAROUR in the manner intended by Defendants.

68.     The recalled machines were defective at the time of their manufacture, development, production, testing, inspection, endorsement, sale and distribution, and at the time they left the possession of the Defendants, in that, and not by way of limitation, the products differed from the Defendants' intended result and intended design and specifications, and from other ostensibly identical units of the same product line.

69.     Defendants, and each of them, knew or should have known of the defective nature of the recalled machines, including (among other things), that the PE-PUR foam used in the recalled machine's component parts was prone to flaking, chemicalization, disintegration, that it could enter the user's airways while they slept, and created an unreasonably high risk while in use, and would foreseeably result in injury or death to the public, purchasers, and/or consumers.

70.     The Defendants, and each of them, knew or should have known of the defective nature of the recalled machines, and the component parts of these CPAP/BiPAP machines, including among other things, that the PE-PUR foam used in the recalled machine's component parts was prone to flaking, chemicalization, disintegration, that it could enter the user's airways while they slept, and created an unreasonably high risk while in use, and would foreseeably result in injury or death to the public, purchasers, and/or consumers.

71.     Specifically, the Defendants improperly designed the recalled machines by manufacturing certain Philips machines, including the recalled machines, with a specific lot and/or lots of flawed

polyurethane PE-PUR sound abatement foam that could break down, flake off and/or chemicalize and infiltrate the device's air pathway while the user is sleeping, exposing them to increased and unnecessary risk of cancer, as well as other injuries.

72.     As a direct and legal result of one or more of the above-stated negligent acts, Plaintiffs suffered and will continue to suffer injury of a personal and pecuniary nature, including pain and suffering, medical expenses, lost income, and disability.

Wherefore, Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR pray for judgment against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC. and DOES 1-100, inclusive, as set forth below.

**FOURTH CAUSE OF ACTION – PRODUCT LIABILITY – FAILURE TO WARN**
**(Against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC., and DOES 1-100, inclusive)**

73.     Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR incorporate by reference paragraphs 1-72 above as though fully set forth herein.

74.     The recalled machines, including the Recalled Device used by Plaintiff ELIE ZAAROUR, were not reasonably safe for their intended uses and were defective as described herein as a matter of law due to its lack of appropriate and necessary warnings. Specifically, Defendants did not provide sufficient or adequate warnings including, but not limited to, the following:

   a.     the recalled machine's flawed polyurethane PE-PUR sound abatement foam propensities to break down, flake off and/or chemicalize and infiltrate the device's air pathway while the user is sleeping, exposing them to increased and unnecessary risk of cancer, as well as other injuries;

   b.     the recalled machine's polyurethane PE-PUR sound abatement foam propensities for degradation, fragmentation and/or chemicalization;

   c.     the rate and manner in which the polyurethane PE-PUR sound abatement foam would break down, flake off and/or chemicalize and infiltrate the device's air pathway while the user is sleeping;

d.     the risk of chronic inflammation resulting from use of the recalled machines;

e.     the risk of chronic infections resulting from the recalled machines;

f.     the risk of lung, kidney, and/or rectal cancers from exposure to the foam;

g.     the need for corrective or revision surgery to adjust or remove cancerous tumors and/or nodules as a result of usage of the recalled machines;

h.     the severity of complications that could arise as a result of implantation of the recalled machines.

75.     As a direct and legal result of the recalled machine's aforementioned defects as described herein, the Plaintiffs have experienced significant mental and physical pain and suffering, sustained permanent injury, undergone medical treatment and will likely undergo further medical treatment and procedures, suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

76.     Defendants are strictly liable to the Plaintiffs for designing, manufacturing, marketing, labeling, packaging and selling a defective device.

Wherefore, Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR pray for judgment against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC., and DOES 1-100, inclusive, as set forth below.

**FIFTH CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY**
**(Against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC., and DOES 1-100, inclusive)**

77.     Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR incorporate by reference paragraphs 1-76 above as though fully set forth herein.

78.     Philips marketed and sold the Recalled Device into the stream of commerce with the intent that the Recalled Device would be purchased by Plaintiff ELIE ZAAROUR and other members of the general public.

79.     Philips expressly warranted, advertised, and represented to Plaintiffs that the Recalled Device was safe and appropriate for human use.

80.     Philips made these express warranties regarding the Recalled Device's quality and fitness for use in writing through its website, advertisements, and marketing materials, and on the Recalled Device's packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs entered into upon purchasing the Recalled Device.

81.     Philips' advertisements, warranties, representations, and omissions regarding health risks associated with the Recalled Device, were made in connection with the sale of the Recalled Device to Plaintiffs. Plaintiffs relied on Philips' advertisements, warranties, representations, and omissions regarding the Recalled Device in deciding whether to purchase and use Philips' Recalled Device.

82.     The recalled machines, including the Recalled Device used by Plaintiff ELIE ZAAROUR, did not conform to Philips' advertisements, warranties, representations, and omissions in that they are not safe, healthy, and appropriate for human use, and pose risks of serious injury and disease, including organ failure and cancer.

83.     Philips therefore breached its express warranties by placing the recalled machines, including the machine used by Plaintiff, into the stream of commerce and selling it to consumers, when their use posed health risks, had dangerous effects and were unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Philips. These associated health effects substantially impair the use, value, and safety of the recalled machines, and rendered the machines worthless.

84.     Philips was aware, or should have been aware, of the toxic or dangerous health effects from the use of the recalled machines, including the machine used by Plaintiff ELIE ZAAROUR, but nowhere on the package labeling or package inserts or on Philips' websites or other marketing materials did Philips warn Plaintiffs that Plaintiff ELIE ZAAROUR was at risk of developing adverse health effects as a result of the dangerous PE-PUR Foam used in the recalled machines.

85.     Instead, Philips concealed the dangerous health effects of the PE-PUR Foam used in the recalled machines, including the machine used by Plaintiff ELIE ZAAROUR and deceptively represented that these products were safe, healthy, and appropriate for use. Philips thus failed to ensure that the material representations they were making to consumers were true.

86.     The adverse health effects associated with use of the recalled machines, including the

machine used by Plaintiff ELIE ZAAROUR existed when they left Philips' possession or control and were sold to Plaintiffs. The dangers associated with use of the recalled machines were undiscoverable by Plaintiffs at the time of purchase of the Recalled Device.

87.    As manufacturers, marketers, advertisers, distributors and sellers of the Recalled Devices, Philips had exclusive knowledge and notice of the fact that the Recalled Devices did not conform to the affirmations of fact and promises.

88.    In addition, or in the alternative, to the formation of an express contract, Philips made each of the above-described representations and omissions in purchasing and using the Recalled Device.

89.    Philips' affirmations of fact and promises and its omissions were material, and Plaintiffs reasonably relief upon such representations and omissions in purchasing and using the Recalled Device.

90.    All conditions precedent to Philips's liability for its breach of express warranty have been performed by Plaintiffs.

91.    Affording Philips an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Philips was placed on reasonable notice from user reports and its lab testing that the PE-PUR Foam in the Recalled Devices, including the machine used by Plaintiff ELIE ZAAROUR was unsafe. Philips had ample opportunity either to stop using the PE-PUR Foam or to replace the PE-PUR Foam in the Recalled Devices to make them safe and healthy for use by Plaintiff but failed to do so until now.

92.    As a direct and legal result of the recalled machines, including the machine's aforementioned defects as described herein, the Plaintiffs have experienced significant mental and physical pain and suffering, sustained permanent injury, undergone medical treatment and will likely undergo further medical treatment and procedures, suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

Wherefore, Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR pray for judgment against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC. and DOES 1-100, inclusive, as set forth below.

///

### SIXTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC., and DOES 1-100, inclusive)

93.     Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR incorporate by reference paragraphs 1-92 above as though fully set forth herein.

94.     Philips are merchants engaging in the sale of goods to Plaintiffs and members of the general public.

95.     There was a direct sale of goods from Philips to Plaintiffs, creating privity between Plaintiffs and Defendants.

96.     At all times mentioned herein, Philips manufactured or supplied the recalled machines, including the machine used by Plaintiff ELIE ZAAROUR, and prior to the time of use, Philips impliedly warranted to Plaintiffs that the Recalled Devices, including the machine used by Plaintiff ELIE ZAAROUR was of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact and omissions made on the labels and packaging, including that the machines were safe and appropriate for human use. Plaintiffs relied on Philips' promises and affirmations of fact and omissions when they purchased the Recalled Device and Plaintiff ELIE ZAAROUR used the Recalled Device.

97.     Contrary to these representations and warranties, the Recalled Devices, including the machine used by Plaintiff ELIE ZAAROUR was not fit for its ordinary use and did not conform to Philips' affirmations of fact and promises and omissions because use of the Recalled Devices is accompanied by the risk of adverse health effects, which does not conform to the labels and packaging of these devices.

98.     Philips breached its implied warranties by selling a Recalled Device, including the machine used by Plaintiff ELIE ZAAROUR that failed to conform to the promises or affirmations of fact made on the packaging or label, as use of each Recalled Device was accompanied by the risk of developing adverse health effects that do not conform to the packaging or label.

99.     Philips was on notice of this breach, as it was made aware of the adverse health effects

accompanying use of the Recalled Devices through user reports submitted to Philips and through lab testing.

100.     Privity exists because Philips impliedly warranted to Plaintiff through the warranting, packaging, advertising, marketing, and labeling that the Recalled Devices were natural, and suitable for use to treat health conditions, and made no mention of the attendant health risks associated with use of the Recalled Devices.

101.     As a direct and legal result of the Recalled Devices, including the aforementioned defects as described herein, Plaintiffs have experienced significant mental and physical pain and suffering, sustained permanent injury, undergone medical treatment and will likely undergo further medical treatment and procedures, suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

Wherefore, Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR pray for judgment against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC., and DOES 1-100, inclusive, as set forth below.

**SEVENTH CAUSE OF ACTION – INTENTIONAL MISREPRESENTATION**
**(Against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, and DOES 1-100, inclusive)**

102.     Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR incorporate by reference paragraphs 1-101 above as though fully set forth herein.

103.     Defendants represented to Plaintiffs that the Recalled Devices were safe for human use and did not pose serious health risks to their users.

104.     Defendants' representation that the Recalled Devices were safe for human use and did not pose serious health risks to their users was false.

105.     Defendants made the representation that the Recalled Devices, including the machine used by Plaintiffs ELIE ZAAROUR, were safe for human use and did not pose serious health risks to their users knowing the representation was false in that the Recalled Devices contained PR-PUR Foam and thus were at risk of causing adverse health effects to users of the Recalled Devices which does not conform to the products' labels, packaging, advertising, and statements.

106.    Defendants intended that Plaintiffs rely on the representation that the Recalled Devices were safe for human use and did not pose serious health risks to their users.

107.    Plaintiffs reasonably relied on Defendants' representation that the Recalled Devices were safe for human use and did not pose serious health risks to their users.

108.    Plaintiffs were harmed due to this reasonable reliance on Defendants' representation.

109.    Plaintiffs' reliance on Defendants' representation was a substantial factor in causing their harm.

Wherefore, Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR pray for judgment against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, and DOES 1-100, inclusive, as set forth below.

**EIGHTH CAUSE OF ACTION – CONCEALMENT**
**(Against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, and DOES 1-100, inclusive)**

110.    Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR incorporate by reference paragraphs 1-109 above as though fully set forth herein.

111.    Philips intentionally failed to disclose certain facts regarding the serious health threats posed by the use of the Recalled Devices that were known only to Philips and that Plaintiffs could not have discovered.

112.    Plaintiffs did not know of the concealed fact regarding the serious health threats posed by the use of the Recalled Devices, including the machine used by Plaintiff ELIE ZAAROUR.

113.    Philips intended to deceive Plaintiffs by concealing the facts regarding the serious health threats posed by the use of the Recalled Devices, including the machine used by Plaintiff ELIE ZAAROUR.

114.    Had the omitted information been disclosed, Plaintiffs reasonably would have stopped using the machine used by regarding the serious health threats posed by the use of the Recalled Devices, including the machine used by Plaintiff ELIE ZAAROUR.

115.    Plaintiffs were harmed due to their use of the recalled machine.

116.    Philips' concealment was a substantial factor in causing Plaintiffs' harm.

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

Wherefore, Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR pray for judgment against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, and DOES 1-100, inclusive, as set forth below.

**NINTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION**
**(Against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC., and DOES 1-100, inclusive)**

117.     Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR incorporate by reference paragraphs 1-116 above as though fully set forth herein.

118.     Philips represented to Plaintiffs that use of the Recalled Devices, including the machine used by Plaintiff ELIE ZAAROUR, did not pose serious health risks.

119.     Philips' representation that use of the Recalled Devices, including the machine used by Plaintiff ELIE ZAAROUR, did not pose serious health risks was false.

120.     Philips had a duty to Plaintiffs to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of the Recalled Devices, including the machine used by Plaintiff ELIE ZAAROUR.

121.     Philips breached its duty to Plaintiff by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs that did not have the qualities, characteristics, and suitability for use as advertised by Philips and by failing to promptly remove the Recalled Devices, including the machine used by Plaintiff ELIE ZAAROUR from the marketplace or to take other appropriate remedial action upon becoming aware of the health risks of the Recalled Devices.

122.     Philips knew or should have known that the qualities and characteristics of the Recalled Devices, including the machine used by Plaintiff ELIE ZAAROUR were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Philips. Specifically, Philips knew or should have known that:

a)  the use of the Recalled Devices was accompanied by risks of adverse health effects that do not conform to the packaging and labeling;

b)  the Recalled Devices were adulterated, or at risk of being adulterated, by the Pe-PUR Foam; and

c)   the Recalled Devices were otherwise not as warranted and represented by Philips.

123.   Philips intended that Plaintiffs rely on the representation that that use of the Recalled Devices, including the machine used by Plaintiff ELIE ZAAROUR, did not pose serious health risks.

124.   Plaintiffs reasonably relied on Philips' representation.

125.   As a direct and proximate result of Defendant's negligence, the Plaintiffs have experienced significant mental and physical pain and suffering, sustained permanent injuries, undergone medical treatment and will likely undergo further medical treatment and procedures, suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages.

Wherefore, Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR pray for judgment against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC., and DOES 1-100, inclusive, as set forth below.

## TENTH CAUSE OF ACTION – LOSS OF CONSORTIUM
**(Against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC., and DOES 1-100, inclusive)**

126.   Plaintiff ROULA ZAAROUR incorporate by reference paragraphs 1-125 above as though fully set forth herein.

127.   Plaintiff ROULA ZAAROUR was at all times relevant to this complaint the lawfully wedded wife of Plaintiff ELIE ZAAROUR.

128.   As a direct and proximate result of the harms caused by Defendants to Plaintiffs, Plaintiff ROULA ZAAROUR has suffered a loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and the loss of the enjoyment of intimacy with her husband, Plaintiff ELIE ZAAROUR.

Wherefore, Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR pray for judgment against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, SUPERCARE HEALTH, INC. and DOES 1-100, inclusive, as set forth below.

### PRAYER

WHEREFORE, with respect to each cause of action listed above, Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR pray for damages against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; PHILIPS RS NORTH AMERICA LLC; SUPERCARE HEALTH, INC. and DOES 1-100, inclusive, and each of them as follows:

1.    General damages in an amount to be determined by proof at trial;

2.    Special damages in an amount to be determined by proof at trial;

3.    Interest as permitted by law;

4.    Costs of this action;

5.    Any other and further relief that the court considers proper.

### DEMAND FOR JURY TRIAL

As to the matters complained of herein against Defendants KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; PHILIPS RS NORTH AMERICA LLC; SUPERCARE HEALTH, INC., and DOES 1-100, inclusive, and each of them, Plaintiffs ELIE ZAAROUR and ROULA ZAAROUR demand a trial by jury.

Dated: April 25, 2022                        Respectfully submitted,

**RAINS LUCIA STERN**
**ST. PHALLE & SILVER, PC**


By:  GEORGE W. ELLARD
         Attorneys for Plaintiffs ELIE ZAAROUR and
         ROULA ZAAROUR

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED